UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE GJOKAJ,

        Plaintiff,

                                         Case No. 06-CV-13179
vs.                                     HON. GEORGE CARAM STEEH

NATIONWIDE MUTUAL INS. CO.,

        Defendant.

_____/

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#18)

Defendant Nationwide Mutual Insurance Company ("Nationwide") moves for summary judgement of plaintiff George Gjokaj's claims of employment discrimination, retaliation, and harassment on the basis of national origin in violation of the Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. §§ 37.2101, et seq., and plaintiff's further claims of breach of contract, promissory estoppel, and unenforceable non-compete clause. A hearing on the motion was held on July 12, 2007. For the reasons set forth below, Nationwide's motion for summary judgment will be GRANTED as to all claims.

I. FACTUAL BACKGROUND

Plaintiff George Gjokaj filed a complaint in St. Clair County Circuit Count on May 4, 2006 (with venue changed to Macomb County Circuit Court on May 11, 2006) alleging he was employed since December 6, 1999 as an insurance agent for Nationwide under a just cause contract when, on June 7, 2004, he was discharged without cause and for discriminatory and retaliatory reasons on the basis of his Albanian national origin. The

lawsuit was removed on the basis of diversity jurisdiction on July 13, 2006.[1]

Gjokaj, a first generation-Albanian U.S. citizen, was hired as a Financed Community Agent ("FCA") for Nationwide to operate an insurance agency office in St. Clair Shores, Michigan, which has a significant Albanian-ethnicity population, and focused his business on the Albanian community. Over 90% of Gjokaj's book of business involved customers of Albanian ethnicity. Working as an FCA allowed an agent to receive financing and training from Nationwide in exchange for selling Nationwide products according to company guidelines. The employment agreement required FCA's to follow all Nationwide underwriting guidelines and policies, including those outlined in the Agency Business Practices manual that plaintiff received, and to meet sales quota and profitability requirements, known as "viability." The goal was to achieve Independent Contractor ("IC") status after successfully completing the FCA program for the financing period.

FCA compliance with underwriting guidelines was insured by underwriting auditors in a review process. In June of 2002, Underwriting Product Consultant Ms. Rose Virgin identified some problems with some of Gjokaj's policies, including, for example, undisclosed drivers. Gjokaj's supervisor, Sales Manager Mr. Richard Demartis, recommended that plaintiff's agency be put on "prior approval" status, meaning that auto policies he would write for clients would be reviewed by an underwriting auditor before being approved. Other FCA's in Michigan have been put on this status as well, and plaintiff does not claim that the change of status was discriminatory. Gjokaj alleges, however, that any problems identified by Virgin were tainted by discriminatory animus, and alleges that

---

[1] Gjokaj is a citizen of Michigan. Nationwide is a citizen of Ohio, being a Ohio corporation with its principal place of business in Ohio. See 28 U.S.C. § 1332.

any mistakes were minor and that throughout the FCA period he complied with all guidelines and maintained a successful business.

During the prior approval period, effective July 18, 2002, Virgin had authority to review Gjokaj's compliance with company underwriting policies, reject insurance applications she judged not to be in compliance, send applications back to Gjokaj to request additional information, and to report violations of company policies and business practice's to plaintiff's supervisors. Gjokaj alleges that Virgin began to "hyper-scrutinize" policies he had sold to Albanian customers and then to reject many of these submissions, leading to lower performance evaluations and reduced profitability for his business. Although another auditor, Mr. John Williams, also found problems with Gjokaj's submissions, Gjokaj alleges that Williams reported to Virgin and did not have any independent judgment regarding Gjokaj's policies. DeMartis suspended Gjokaj's binding authority for new automobile business until the end of December, 2002, but Gjokaj alleges that his business improved in 2003 such that he was removed from prior approval on February 18, 2003. Gjokaj alleges that Virgin objected to his removal from prior approval as a result of her discriminatory animus against him.

DeMartis informed Gjokaj that although Nationwide had restored his binding authority for automobile policies, Gjokaj would still have his business reviewed in "spot checks" to ensure continued compliance with company guidelines. Virgin identified further instances of non-compliance with company policy via these "spot checks." Then, at an audit meeting on April 8, 2003, Virgin allegedly pulled a file with an Albanian name and made a derogatory remark. Gjokaj testifies that "she jokingly said, oh with a name like that you know you are going to have claims." (Gjokaj Dep. 115, April 2, 2007). Virgin denies

saying this but Gjokaj's two staff members, Ms. Lujeta Sinishtaj and Ms. Vabona Lucaj, (both of Albanian ethnicity) testify to hearing the comment as well.  Sinishtaj testifies that Virgin said "this last name will tell you right there that there is a claim going to be coming in, coming up pretty soon."  (Sinishtaj Dep. 19-20, April 4, 2007).  Gjokaj also reports a conversation on another day where Virgin said that she didn't realize there were so many Albanian names ending in "aj" as Gjokaj explained some Albanian naming conventions. Gjokaj testifies generally to other allegedly discriminatory comments made by Virgin, but does not identify any specific statement other than the previous two examples.  Gjokaj further testifies that he has the impression that all of the continuing scrutiny and "nitpicking" of his business by Virgin was the result of discrimination on the basis of Albanian national origin.

Gjokaj says that shortly after the alleged discriminatory comments by Virgin he complained about mistreatment to his supervisor DeMartis, who testifies that he remembers Gjokaj mentioning general allegations about mistreatment and "nitpicking." Gjokaj also testifies that he complained to Virgin herself.  Gjokaj did not complain in writing to any Nationwide employee.  Plaintiff alleges that extra scrutiny by Ms. Virgin occurred after his complaints, and that but for her "nitpicking" he would have advanced to IC status.

DeMartis informed Gjokaj that his business was to be put on probation on March 17, 2004, again based on data collected by Ms. Virgin.  Gjokaj was also told that his business was below the necessary "viability" level and that he would have to improve this ratio and his profitability by May 31, 2004, in order to advance to IC.  Gjokaj further alleges that he exceeded the requirement of 80% viability in April and May of 2004, but that this updated information was ignored by Nationwide.   During the probation, Virgin identified additional

problems with underwriting guideline compliance, and Nationwide terminated Gjokaj in June of 2004 for the stated reason of failure to follow company underwriting guidelines.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National

Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## III. ANALYSIS

### A. DISPARATE TREATMENT EMPLOYMENT DISCRIMINATION

Michigan's Elliott-Larsen Civil Rights Act prohibits an employer from discharging an employee because of their national origin. M.C.L. § 37.2202(1)(a). A plaintiff may establish a prima facie case of discrimination under the Elliott-Larsen Civil Rights Act either by presenting direct evidence of intentional discrimination by the defendant or by showing the existence of circumstantial evidence which creates an inference of discrimination. Hoffman v. Sebro Plastics, 108 F. Supp. 2d 757 (E.D. Mich. 2000). Direct evidence of unlawful discrimination is evidence that, if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor" in the challenged employment decision. Harrison v. Olde Financial Corp., 225 Mich. App. 601, 610, 572 N.W.2d 679 (1988). "Direct evidence proves the existence of a fact without any inferences or presumptions." Preston v. Berendsen Fluid Power, 125 F.Supp.2d 245, 250 (W.D. Mich. 2000).

Absent direct evidence of unlawful discrimination, the framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), requires the ELCRA plaintiff to establish a prima facie case that: (1) he is a member of the protected class; (2) he suffered an adverse employment action such as discharge; (3) he was qualified for the position; and (4) he was discharged under circumstances giving rise to a reasonable inference of unlawful discrimination. Lytle v. Malady (On Rehearing), 458 Mich. 153, 172, 573 N.W.2d 906 (1998). In an employment discrimination case, a plaintiff may establish a prima facie case of discrimination under the ELCRA by showing that the plaintiff was a member of a class entitled to protection under the statute and that, for the same or similar conduct, he was treated differently by the employer than a person outside that class. Reisman v. Regents Wayne State Univ, 188 Mich. App. 526, 538; 470 N.W.2d 678, 685 (1991). If the prima facie showing is made, the employer has the burden of producing evidence of a legitimate reason for the discharge. Town v. Michigan Bell Telephone Co., 455 Mich. 688, 695, 568 N.W.2d 64 (1997).

If the employer meets this burden of production, the plaintiff is required to submit admissible evidence that the employer's nondiscriminatory reason was not the true reason for the discharge, but a mere pretext for discrimination, and that the plaintiff's protected class status was a motivating factor in the discharge decision. Id. at 697. Three ways to establish pretext include: (1) showing that the reasons proffered by the employer have no basis in fact; (2) if the reasons have a factual basis, that they are not the actual factors that motivated the discharge decision; or (3) if the proffered reasons were factors, that the reasons were nonetheless insufficient to justify discharge. Dubey v. Stroh Brewery Co., 185 Mich. App. 561, 565-66, 462 N.W.2d 758 (1990). Once the employer articulates a

legitimate, nondiscriminatory reason for its employment actions and the presumption created by the <u>McDonnell Douglas</u> prima facie case drops away, "to survive a motion for summary disposition, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, 'is sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.'" <u>Hazle v. Ford Motor Co.</u> 464 Mich. 456, 465, 628 N.W.2d 515, 522 (2001) (quoting <u>Lytle</u>, 458 Mich. at 176). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 148 (2000).

### i. DIRECT EVIDENCE

Virgin's comments that referred to Albanian national origin (and subsequent alleged "hyper-scrutiny") do not "require" an interpretation that they were "at least a motivating factor" in the decision to fire Gjokaj. Ms. Virgin was not plaintiff's supervisor, but even if her role in providing data that led to his dismissal could make her a "decision-maker," <u>see Sniecinski v. Blue Cross and Blue Shield of Michigan</u>, 469 Mich. 124, 136; 666 N.W.2d 186, 194 (2003), plaintiff must produce evidence of bias that does not require "inferences and presumptions," <u>see Preston</u>, 125 F. Supp. 2d at 250. Statements that are "isolated and ambiguous" – especially (but not exclusively) those that are "made facetiously and [were] not directed at any particular individual"[2] – "are too abstract, in addition to being irrelevant and prejudicial, to support a finding of [employment] discrimination." <u>Gagne v.</u>

___

[2] Plaintiff testifies that although he found the initial comment offensive, Virgin made it "jokingly." (Gjokaj Dep. 115).

Northwestern National Ins. Co., 881 F.2d 309, 314 (6th Cir. 1989); see also Thomas v. Autumn Woods Residential Health Care Facility, 905 F. Supp. 414, 421 (1995) (finding "instances of only one employee discriminating against her by 'knit picking' [sic] and calling her names such as 'blond bimbo' [sic]" not sufficient to survive summary judgment on intentional discrimination claim). Virgin's alleged remarks in this case fall far short of compelling a finding constituting direct evidence. Furthermore, Virgin's remarks were not "clear, pertinent, and directly related to decision-making personnel or processes." See Dobbs-Weinstein v. Vanderbilt University, 1 F. Supp. 2d 783, 798 (M.D. Tenn. 1998), aff'd, 185 F.3d 542 (6th Cir. 1999) (citation omitted). Plaintiff therefore does not have direct evidence of national origin discrimination.[3]

## ii. INDIRECT EVIDENCE

As plaintiff's Albanian national origin status is not contested, and as plaintiff was eventually put on probation and dismissed, prongs one and two of the McDonnell Douglas analysis are satisfied. See Lytle, 458 Mich. at 172. For prong three, while "plaintiff must show that [he] was performing at a level which met defendant's legitimate expectations," see McDonald v. Union Camp Corp., 898 F.2d 1155, 1160 (6th Cir. 1990) (quoting Huhn v. Koehring, 718 F.2d 239, 243 (7th Cir. 1983)), the court must consider the plaintiff's

---

[3] Even if Ms. Virgin's comments could be considered direct evidence of discriminatory animus on the basis of national origin, without any evidence that the scrutiny of Mr. Gjokaj's business was unusual or was not standard practice for Nationwide, such that the decision to fire would not have happened regardless, plaintiff has not "establish[ed] evidence of the plaintiff's qualification (or other eligibility) and direct proof that the discriminatory animus was causally related to the decisionmaker's action." See Harrison v. Olde Fin. Corp., 225 Mich. App. 601, 613 (Mich. Ct. App. 1997) (quoting Price Waterhouse v Hopkins, 490 U.S. 228; 109 S. Ct. 1775; 104 L. Ed. 2d 268 (1989) (Title VII case)).

employment record "prior to the onset of the events that the employer cites as its reason" for its decision to terminate, <u>Cline v. Catholic Diocese of Toledo</u>, 206 F.3d 651, 662-63 (6th Cir. 2000), exclusive of the legitimate nondiscriminatory reason offered by the employer to rebut evidence of pretext, <u>see</u> <u>id.</u> at 660-61.  Plaintiff has shown enough evidence, based on his qualifications at hiring and on early recognition for good work, to satisfy prong three under the <u>Cline</u> standard.  <u>See</u> 206 F.3d at 662-63.

However, plaintiff's case fails at prong four.  Plaintiff has not identified any other employee who was similarly situated and treated differently by defendant, and therefore cannot establish a prima facie case.  <u>See</u> <u>Jacklyn v. Shering-Plough Healthcare Products Sales Corp.</u>, 176 F.3d 921, 929 (6th Cir. 1999).  Plaintiff admits that other employees, for example, were put on "prior approval" status – the situation that led to increased scrutiny – and no evidence that the level of scrutiny plaintiff underwent was unusual for an employee on "prior approval" status.

Plaintiff makes two arguments in order to attempt to create a genuine issue of material fact as to whether he was discharged under circumstances giving rise to a reasonable inference of unlawful discrimination.  <u>See</u> <u>Lytle</u>, 458 Mich. at 172.  First, plaintiff made vague allusions in his deposition to incidents where he would send his submissions to another FCA, who would deem it to have no underwriting problem, and then sent the same submission to Virgin, who would find underwriting policy violations.  Plaintiff does not support this assertion with any independent testimony or evidence, and in particular does not offer evidence that the other agents were similarly situated (for example, evidence that those agents were on prior approval), nor any evidence that the problems identified by Virgin in these alleged "blind submission" cases  were not bona fide violations of company

policy.   This cannot stand as evidence that plaintiff was "treated differently than similarly-situated [non-Albanian] employees for the same or similar conduct."  See Jacklyn, 176 F.3d at 929.

Second, plaintiff argues that the deposition testimony of his employees Sinishtaj and Lucaj shows that they, as experienced workers in the insurance business, found Virgin's scrutiny to be excessive compared with other agencies.   This claim is a mis-characterization of that testimony – these employees testify that they felt uncomfortable with the level of scrutiny, but made no comparison to the scrutiny of any other insurance agency, let alone a similarly situated agency.  See id.  Furthermore, these claims  that the alleged "hyper-scrutiny" was discriminatory are the conclusory opinions of lay witnesses, and are generally not admissible unless those opinions are factually or rationally based. See id. at 926 (citing Federal Rule of Evidence 701).

These subjective impressions are not supported by evidence to indicate "circumstances giving rise to a reasonable inference of unlawful discrimination" – without comparative evidence of what happened to similarly situated employees, there is no way for a fact-finder to objectively determine that any of the scrutiny plaintiff underwent that led to his dismissal was unusual.  See Lytle, 458 Mich. at 172 (emphasis added); see also Thomas v. Autumn Woods Residential Health  Care Facility, 905 F. Supp. 414, 421 (1995) (finding "instances of only one employee discriminating against her by 'knit picking' [sic] and calling her names such as 'blond bimbo' [sic]" not sufficient to make out a prima facie case of intentional discrimination).   Of course, comparative evidence is not the only way to establish a prima facie case of employment discrimination – but "[w]hile a plaintiff is not required to show circumstances giving rise to an inference of discrimination in any one

specific manner, the plaintiff's burden of production remains to present evidence that the employer's actions, 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" <u>Hazle</u>, 464 Mich. at 470-71 (quoting <u>Tex. Dept. of Cmty Affairs v. Burdine</u>, 450 U.S. 248, 253, n.6; 101 S. Ct. 1089; 67 L. Ed. 2d 207 (1981)).

In the instant case, there is no record evidence that any other Nationwide employee or manager found the way plaintiff's business was reviewed to be unusual. Also there is no evidence offered to dispute that plaintiff actually violated company underwriting guidelines. Thus, a rational fact-finder could not conclude that defendant's actions to terminate Gjokaj were "based on the consideration of impermissible factors." <u>See</u> <u>id.</u> Accordingly, Plaintiff failed to establish a prima facie case of employment discrimination.

Even if plaintiff could establish a prima facie case, defendant has met its burden of producing evidence that plaintiff failed to conform to company underwriting policies. On the other hand, the evidence relied on by plaintiff, construed in the light most favorable to him, is insufficient to permit a reasonable fact-finder to conclude that plaintiff's failure to comply with Nationwide underwriting policies was not the actual factor, or was not a sufficient factor, to justify Gjokaj's termination. <u>See</u> <u>Town</u>, 455 Mich. at 697; <u>Dubey</u>, 185 Mich. App. at 565-66. Although the evidence of Ms. Virgin's comments and any inferences therefrom used to establish a prima facie case may also be used to show pretext, <u>see</u> <u>Town</u>, 455 Mich. at 696, a "new level of specificity" is required at this stage. <u>Lytle</u>, 456 Mich. at 29. While plaintiff claims he met the business requirements of defendant, his own testimony contradicts this conclusion, as he admits making mistakes in following company guidelines. There is insufficient record evidence that defendant fired plaintiff for any reason other than

his failure to follow defendant's policies,[4] and plaintiff's statements in his affidavit to the contrary are not enough to overcome summary judgment, as "[c]onclusory allegations are insufficient to rebut evidence of nondiscriminatory conduct." See Smith v. Consolidated Rail Corp., 168 Mich. App. 773, 779; 425 N.W.2d 220, 224 (1998). Rather, defendant has produced uncontested evidence of "particularized facts" – including plaintiff's admissions,[5] documentation to support Virgin's statements that Gjokaj was not in compliance,[6] and the conclusions of Nationwide employees other than Virgin[7] – to support its proffered reason for firing Gjokaj. See Parker v. Key Plastics, Inc., 68 F. Supp. 2d 818, 829-30 (E.D. Mich. 1999).

Even if Virgin were looking very closely at plaintiff's records as part of her job as an underwriting auditor, without evidence that this scrutiny deviated significantly from company

---

[4] Gjokaj's argument that Nationwide's decision is suspect since his business may have reached "viability" is irrelevant, since plaintiff must show that the preferred reason for termination, violation underwriting guidelines, is pretextual. See Hein v. All America Plywood Co., Inc., 232 F.3d 482, 489 (6th Cir. 2000). "Viability" is a distinct concept.

[5] For example, in a reply to a memo from DeMartis cutting off Gjokaj's binding authority for new automobile business until the end of December, 2002, Gjokaj outlined a plan to fix the problems and admitted that "there still needs to be dramactic [sic] improvement in a couple of areas." (Gjokaj Ex. 30). Gjokaj testified in his deposition: "It's very possible that I made mistakes." (Gjokaj Dep. 327).

[6] The record contains copies of many of Virgin's actual underwriting reports.

[7] For example, there is documentation in the record through e-mail conversations that other attendees of the April 8, 2003 audit meeting (not privy to Virgin's alleged discriminatory remarks), such as Williams and DeMartis, were concerned with problems that they uncovered in the audit. DeMartis sent Gjokaj a notification letter of non-compliance that stated, in part: "As a result of the findings of the 4/8/03 file review, your agency is out of compliance in the areas identified. If, at any time, I continue to find issues out of compliance in these areas, I will recommend appropriate administrative action, including suspension of binding authority." (Gjokaj Ex. 10).

policy or practice, or that the problems that were discovered were not bona fide violations of company underwriting guidelines, the review of plaintiff's records simply reflected defendant's business judgment. <u>See</u> <u>McDonald</u>, 898 F.2d at 1160; <u>see also</u> <u>Lytle</u>, 458 Mich. at 183 (concluding there was no pretext because plaintiff "failed to provide any evidence to show that her critical performance evaluations were not merited"); <u>Dubey</u>, 185 Mich. App. at 566 ("The soundness of an employer's business judgment, however, may not be questioned as a means of showing pretext"). Plaintiff argues, however, that Virgin's review of his underwriting compliance was subjective, and therefore subject to more careful scrutiny when analyzed for pretext. This argument, however, distorts the facts. Defendant has proffered unrebutted evidence – by producing, for example, the Agency Business Practices manual – that the underwriting reviews were based almost entirely on objective criteria, even if there was some discretion involved with the exact level of scrutiny to apply to plaintiff's business. For example, whether or not an automobile policy is written with an undisclosed driver is an objective, fact-based determination. Without evidence that underwriting reviews were applied differently to Gjokaj's business, this assertion of subjectivity cannot create an issue of fact regarding pretext. <u>See</u> <u>Dubey</u>, 185 Mich. App. at 566; <u>cf.</u> <u>Thurman v. Yellow Freight Systems, Inc.</u>, 90 F.3d 1160, 1167 (6th Cir. 1996) (finding greater scrutiny of defendant's reasons appropriate when criteria were <u>solely</u> subjective). Even if there is some element of subjectivity in Virgin's decision to review certain files at the Gjokaj agency, Virgin's reports were not "contradicted by 'objective' evidence," nor must Nationwide "justify its decisions with mathematical precision or through quantifiable measures." <u>See</u> <u>Nizami v. Pfizer, Inc.</u>, 107 F. Supp. 2d 791, 804 (E.D. Mich. 2000). Nationwide's decision need not even "be determined by a court to be objectively

rational and reasonable." <u>See id.</u>

If Ms. Virgin's isolated comments are not enough to establish direct evidence of discrimination, without more, they should not be sufficient to establish pretext. <u>See</u> <u>Lytle</u>, 458 Mich. at 172; <u>cf.</u> <u>Fuhr v. Sch. Dist. of Hazle Park</u>, 364 F.3d 753, 759 (6th Cir. 2004) (affirming denial of summary judgment when there was additional direct and circumstantial evidence that gender played a role in a decision not to hire, including multiple statements in testimony by decision-makers and other parties that gender affected the decision). Taking the record in a light most favorable to plaintiff, there is still not enough evidence "to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." <u>See</u> <u>Lytle</u>, 458 Mich. at 175-76.

<u>B. HARRASSMENT / HOSTILE WORK ENVIRONMENT</u>

To establish a prima facie claim that defendant created a hostile work environment, plaintiff must establish that: (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of his protected status; (3) the employee was subjected to unwelcome conduct or communication involving his protected status; (4) the unwelcome conduct was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile or offensive work environment; and (5) respondeat superior. <u>Quinto v. Cross and Peters Co.</u>, 451 Mich. 358, 547 N.W.2d 314, 319-20 (1996). Whether a hostile work environment was created by the unwelcome conduct "shall be determined by whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an

intimidating, hostile, or offensive employment environment." <u>Radtke v Everett</u>, 442 Mich. 368, 394; 501 N.W.2d 155 (1993). Harassment can be found when the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993); <u>see</u> <u>also</u> <u>Bowman v. Shawnee State Univ.</u>, 220 F.3d 456, 463 (6th Cir. 2000).

Virgin's isolated comments cannot as a matter of law indicate that the workplace was permeated with discriminatory conduct that would change the conditions of plaintiff's employment; the comments cannot constitute "severe" or "pervasive" harassment. <u>See Bourini v. Bridgestone/Firestone N. Am. Tire, LLC</u>, 136 Fed. Appx. 747, 751 (6th Cir. 2005). Furthermore, without evidence that the scrutiny of plaintiff's records was unusual according to Nationwide policies and business practices, Virgin's acts as auditor cannot constitute harassment even if they are perceived to be "nitpicking" and "hyper-scrutiny" by plaintiff; rather, they reflect Virgin's and defendant's business judgement. <u>See McDonald</u>, 898 F.2d at 1160.

## C. RETALIATION

Michigan's ELCRA provides that "a person shall not . . . retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." M.C.L. § 37.2701(a). A prima facie case of unlawful retaliation requires a showing that: (1) the plaintiff was engaged in activity protected by the ELCRA; (2) the defendant knew the plaintiff was engaged in such activity; (3) the defendant took an adverse employment action against the plaintiff; and (4) a causal

16

connection between the protected activity and the adverse employment action. Garg v. Macomb County Community Mental Health Servs., 472 Mich. 263, 291-92, 696 N.W.2d 646 (2005) (quoting DeFlaviis v. Lord & Taylor, Inc., 223 Mich. App. 432, 436, 566 N.W.2d 661 (1997)) (internal quotation marks omitted). To establish a causal connection, the plaintiff must show that "the opposition or participation was a significant factor in an adverse employment decision." Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1310 (6th Cir. 1989).

To state an actionable claim based on retaliation for "opposing a violation of [the ELCRA]," the plaintiff is not required to formally invoke or specifically cite the ELCRA. Bromley v. Parisian, Inc., 55 Fed. Appx. 232, 236-37 (6th Cir. 2002) (unpublished) (citing Barrett v. Kirtland Cmty. Coll., 245 Mich. App. 306, 318-19, 628 N.W.2d 63 (2001), and McLemore v. Detroit Receiving Hosp., 196 Mich. App. 391, 396, 493 N.W.2d 441 (1992)). Instead, "the employee's charge must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination." Bromley, 55 Fed. Appx. at 237 (quoting Barrett, 245 Mich. App. at 319).

Plaintiff claims his complaints were an opposition activity that played a significant role in his dismissal. However, "[a]n employee may not invoke the protections of the Act by making a vague charge of discrimination." Id. at 1313. "The employee's charge must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination pursuant to the CRA." McLemore v Detroit Receiving Hosp & Univ Medical Center, 196 Mich. App. 391, 396; 493 N.W.2d 441 (1992). Although defendant argues that nothing in Plaintiff's testimony demonstrates an allegation specific enough to convey a claim of an ELCRA violation "to an objective employer," see id.,

construing Gjokaj's testimony in a light most favorable to plaintiff,[8] a reasonable jury could conclude that Gjokaj clearly conveyed to DeMartis that "he was raising the specter of a national origin discrimination claim," see Bromley, 55 Fed. Appx. at 237 (citing Barrett, 245 Mich. App. at 318-19).

However, even if plaintiff's allegations of complaints constitute opposition activity, there is insufficient evidence that his complaints were "a significant factor" in his dismissal because: 1) there is no evidence that the ultimate decision makers (Kates and Young) were aware of the complaints, 2) the dismissal occurred over a year since the alleged complaint, 3) DeMartis did not himself make the decision to dismiss plaintiff, and 4) there is no mention of the complaints in any documentation of the decision to fire. See Booker, 879 F.2d at 1314. Finally, defendant's documented legitimate business reasons, discussed supra, defeat claims that the dismissal was pretextual. See Booker, 879 F.2d at 1314.

Plaintiff argues that to the extent that Ms. Virgin's scrutiny of plaintiff's business increased significantly after the complaint, that scrutiny could be considered an adverse employment action and thereby establish a prima facie case of retaliation. See Ford v. GMC, 305 F.3d 545, 554 (6th Cir. 2002). Plaintiff testified that the scrutiny increased after his complaints; however, his placement on "prior approval status" occurred before any alleged complaint or discrimination, which weakens the causal connection. See Booker, 879 F.2d at 1314. However, even if increased scrutiny after the alleged complaints could be established, without evidence that this review was unusual for an FCA in Gjokaj's

---

[8] Plaintiff's sworn testimony states that he complained to DeMartis, "I . . . was unjustifiably scrutinized because of my ethnic background because of the characteristics of my background, the characteristics of the majority of the clientele in my office." (Gjokaj Dep. 336).

position, defendant has merely acted to enforce underwriting guidelines – otherwise, any employer attempting to improve an employee's work would face claims of retaliation any time scrutiny intervened after a claim of discrimination. See id. (intervening events prevented a showing of causation).[9] Mere temporal proximity between Gjokaj's alleged complaint to DeMartis and the increase in scrutiny would be insufficient to prove a causal connection between the two events. "Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." West v. GMC, 469 Mich. 177, 186, 665 N.W.2d 468 (2003).

Defendant's employees, including those who did not know of any allegations of discrimination, discussed in multiple documents plaintiff's compliance problems without any concern that there was anything unusual about the level of scrutiny of plaintiff's files. Defendant has therefore put forth evidence that the level of scrutiny plaintiff underwent was normal for that type of business, and therefore neither discriminatory nor pretextual. See Booker, 879 F.2d at 1314. Plaintiff has provided no evidence that other underwriters in his position received less scrutiny. See Moore v. KUKA Welding Systems & Robot Corp., 171 F.3d 1073, 1078 (6th Cir. 1999). Therefore, even with this variation on the argument – that

---

[9] Plaintiff's reliance on Ford is misplaced due to several distinguishing points: 1) the plaintiff in Ford had a successful thirty-year work record prior to being "set up" to fail under additional scrutiny, whereas in the instant case plaintiff had been put on "prior approval" and had faced problems with his compliance with defendant's policies prior to any complaints of mistreatment, 2) the Ford plaintiff's actions were "scrutinized more closely than those of his co-workers," whereas in the instant case plaintiff has not put forth sufficient evidence that other FCA's were scrutinized less under similar circumstances, and 3) the Ford plaintiff had his work duties changed significantly, whereas in this case plaintiff was merely scrutinized for policies with which he was already supposed to be in compliance since the beginning of the FCA agreement. See 305 F.3d at 554.

Ms. Virgin's scrutiny alone was an act of unlawful retaliation – plaintiff has not made out a prima facie case and has not shown that the scrutiny was pretextual, given defendant's legitimate business interest in having plaintiff conform with defendant's underwriting policies. See Lytle, 458 Mich. at 172.

## D. BREACH OF CONTRACT, PROMISSORY ESTOPPEL, NON-COMPETE CLAUSE

Employment for an indefinite employment term is presumed to be "at-will" in the absence of contrary evidence. Dolan v. Continental Airlines, 454 Mich. 373, 383, 563 N.W.2d 23 (1997) (citing Toussaint Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880 (1980)). Employment agreements that list acts for which an employee may be terminated for cause are insufficient to create a just-cause contract when those lists are not all-inclusive. Dolan, 454 Mich. at 388 (quoting Rood v. General Dynamics Corp., 444 Mich. 107, 142; 507 N.W.2d 591 (1993) for the proposition that "[a] non-exclusive list of common-sense rules of behavior that can lead to disciplinary action or discharge, clearly reserves the right of an employer to discharge an employee at will"). "When an employment contract expressly provides for employment at will, a plaintiff, by signing the contract, assents to employment at will . . ." Novak v. Nationwide Mut. Ins. Co., 235 Mich. App. 675, 682, 599 N.W.2d 546 (1999).

Plaintiff testifies that he was hired under a contract only allowing him to be fired for cause, and testifies that he was promised he would reach IC status. However, plaintiff's employment agreement has an at-will disclaimer, and there is no document in the record that refers to just-cause employment. The FCA agreement expressed clearly that plaintiff would be employed on an at-will basis, and therefore plaintiff cannot sustain a claim of breach of contract for his dismissal. See Novak, 235 Mich. App. at 682. Furthermore,

plaintiff's post-hoc stated beliefs that he had an implied-in-fact just cause contract must fail, since no statements or explicit promises by management exist in the record that can objectively be construed to create just-cause terms. See Clement-Rowe v. Michigan Health Care Corp., 212 Mich. App. 503, 538 N.W.2d 20 (1995) (statements made by management must create both an objective and subjective belief of just cause employment). Finally, defendant has provided sufficient evidence of problems with plaintiff's compliance with underwriting policies to demonstrate that there would have been cause for plaintiff's dismissal. See McDonald, 898 F.2d at 1164-65.

Plaintiff's promissory estoppel claims fail as well. Plaintiff's signed employment contract contained an express at-will disclaimer, and therefore he cannot state a cause of action for promissory estoppel. See Sneyd v. International Paper Co., 142 F. Supp. 2d 819, 826-27 (E.D. Mich. 2001). Plaintiff furthermore testified that while he felt like he would reach IC status based on statements management told him, "I don't remember a direct promise from anybody." There was therefore no promise, and plaintiff did not allege that he took or forbore any action in reliance on an alleged promise other than continuing his employment with defendant under the terms of his FCA agreement – both necessary elements to sustain a claim of promissory estoppel. See Schipani v. Ford Motor Co., 102 Mich. App. 606, 612-613; 302 N.W.2d 307 (1981).

Finally, plaintiff has no valid claim with respect to his non-compete agreement with Nationwide. A non-compete agreement is enforceable in Michigan if it is "reasonable as to its duration, geographical area, and the type of employment or line of business." M.C.L. § 445.774a. This one-year agreement restricting plaintiff from selling insurance products withing 25 miles of his previous principal place of business of St. Clair Shores, Michigan,

21

is enforceable as a matter of law.  See, e.g. Robert Half Int'l, Inc. v. Steenis, 784 F. Supp. 1263, 1273-74 (E.D. Mich. 1991).  Plaintiff also did not address this issue in his reply, and the claim is moot since the agreement expired one year after coming into effect, well before this suit was filed in May of 2006.

## IV. CONCLUSION

For the reasons stated, defendant's motion for summary judgment is GRANTED. Plaintiff George Gjokaj's claims are hereby DISMISSED with prejudice in their entirety.


SO ORDERED.

Dated:  August 14, 2007


s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of record on
August 14, 2007, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk